UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT

No. 94-1726

RICHARD PICCICUTO D/B/A SHEEHAN'S CAFE,

Plaintiff-Appellant,

v.

RALPH E. DWYER,

Defendant-Appellee.

No. 94-1735

RICHARD PICCICUTO,

Plaintiff-Appellant,

v.

LINDA L. REX,

Defendant-Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Cyr, Circuit Judge,
Bownes, Senior Circuit Judge,
and McAuliffe*, District Judge,



Steven Weiss, with whom Shatz, Schwartz and Fentin, P.C., Richard
M. Howland, and Law Offices of Richard M. Howland, were on brief for
appellant, David J. Noonan, with whom Cohen, Rosenthal, Price, Mirkin
& Wernick for trustee in bankruptcy.
John A. Burdick, Jr., with whom Burdick & DiLeo, P.C. was on
brief for appellees.

November 9, 1994

*Of the District of New Hampshire sitting by designation.

BOWNES, Senior Circuit Judge. Creditor-appellant BOWNES, Senior Circuit Judge.

Richard M. Piccicuto commenced this adversary proceeding in

the bankruptcy court which sought to have a judgment debt

owed him by debtors-appellees Ralph E. Dwyer and Linda Rex

("the landlords") declared nondischargeable under 11 U.S.C.

523(a)(6) (1989).1 Subsequently, he filed a motion for

summary judgment on his claim. The bankruptcy court not only

denied his motion, it sua sponte granted summary judgment to

the landlords. The district court affirmed. Because we find

that summary judgment should have been entered for Piccicuto,

and not against him, we reverse.

I. I.

Throughout 1984 and 1985, the landlords owned

commercial rental property ("the property") in Northampton,

Massachusetts. Ralph Dwyer's son, Jeffrey Dwyer, managed the

property. During that same time period, Richard Piccicuto

owned and operated Sheehan's Cafe, Inc., which was a tenant

of several units (including two basement units) of the

property. Until July 13, 1984, when the parties executed

leases for these basement units, Sheehan's had been a tenant-

at-will therein.

On July 20, 1984, Jeffrey Dwyer met with Timothy

and Paul Driscoll, who had been negotiating with Piccicuto



1. Section 523(a)(6) precludes the discharge of debts
incurred "for willful and malicious injury by the debtor to
another entity or to the property of another entity."

-3- 3

for the purchase of Sheehan's. At that meeting, the

Driscolls requested that the leases of the basement units be

assigned to them. Jeffrey Dwyer not only declined this

request, he denied the existence of the leases. When the

Driscolls reported this to Piccicuto, he telephoned Jeffrey

Dwyer, who informed him that the contemplated deal with the

Driscolls was too good, and that there would be no assignment

unless he and the landlords were paid $50,000 up front.

Piccicuto did not accede to Dwyer's demand.

For the ensuing ten months, Piccicuto attempted to

rectify the situation with the Driscolls, and otherwise tried

to sell the business by placing listings with brokers.

Jeffrey Dwyer interfered with these efforts by telephoning

the brokers and informing them that the leases were invalid,

void, or in litigation. As a result, the brokers withdrew

from listing and showing the property. During this same time

period, whenever Piccicuto's rent payments were a day or so

late, Jeffrey Dwyer deluged him with notices of breach,

notices of termination, and notices to quit. He also

commenced a barrage of noise complaints to the police, none

of which was substantiated to the point of police or court

action. In addition, in January 1985, the landlords

initiated what became series of eviction proceedings against

Piccicuto. All of these proceedings eventually concluded

with judgments in Piccicuto's favor.

-4- 4

Piccicuto was not able to sell the property and, on

July 8, 1985, filed for protection under Chapter 11 of the

Bankruptcy Code. Subsequently, in September 1985, he filed

an action in Massachusetts Superior Court against Jeffrey

Dwyer and the landlords which sought damages for, inter alia,

intentional interference with an advantageous business

relationship and unfair trade practices in a commercial

context. See Mass. Gen. L. ch. 93A, 2 (1993). The case

went to trial in June 1989. Although all defendants were

represented at trial, only defendant Jeffrey Dwyer chose to

appear and testify. At the conclusion of the trial, the

court submitted the common law intentional interference

claims to the jury on special questions, reserving to itself

Piccicuto's claims under ch. 93A. The jury returned a

verdict in favor of Piccicuto for $371,000. The court

accepted this verdict and doubled it to $742,000 under Mass.

Gen. L. ch. 93A, 11 (1993), which directs courts to award

no less than double and no more than triple the actual

damages resulting from a "willful or knowing" violation of

ch. 93A, 2. In conjunction with its decision, the superior

court issued a comprehensive memorandum detailing its

findings and rulings. The memorandum clearly states that

"the defendants' acts [were] willful, malicious and

unjustified." Appendix at 151-52 (emphasis supplied). The

-5- 5

Massachusetts Appeals Court affirmed in all respects.

Piccicuto v. Dwyer, 586 N.E.2d 38 (Mass. App. Ct. 1992).

Meanwhile, in September 1989, the landlords filed

Chapter 11 petitions with the United States Bankruptcy Court

for the District of Massachusetts. Subsequently, Piccicuto

brought this adversary proceeding, and in due time moved for

summary judgment. As we have noted, Piccicuto argued that 11

U.S.C. 523(a)(6) precludes discharge of the $742,000

judgment debt. He based his argument on two theories.

First, Piccicuto contended that the doctrine of collateral

estoppel precluded the landlords from attacking in the

bankruptcy court the superior court's ch. 93A findings that

they had acted willfully, maliciously, and unjustifiably, and

that these findings were, by virtue of collateral estoppel,

binding on the bankruptcy judge. See Grogan v. Garner, 498

U.S. 279, 285 n.11 (1991) (principles of collateral estoppel,

as set forth in the Restatement (Second) of Judgments 27,

apply in dischargeability proceedings brought under

523(a)). In the alternative, Piccicuto asserted that even if

Jeffrey Dwyer was the only defendant who willfully and

maliciously caused him injury, Jeffrey's actions should be

imputed to the landlords under a theory of vicarious

liability.

The bankruptcy court rejected these arguments. For

reasons that are not entirely clear, it misapprehended the

-6- 6

thrust of Piccicuto's first argument and looked only to the

special verdict questions submitted to the jury on

Piccicuto's common law claims. Relying on these questions,

which referred only to actions taken by Jeffrey Dwyer, the

bankruptcy court held that "[i]t is undisputed that the

verdict and subsequent judgment was rendered against the

[landlords] based solely upon their vicarious liability

flowing from the actions of Jeffrey Dwyer." In re Rex, 150

B.R. 505, 506 (Bankr. D. Mass. 1993). The bankruptcy court

then ruled that vicarious liability cannot support a finding

that a debtor acted willfully and maliciously for purposes of

11 U.S.C. 523(a)(6). Id. at 506-07. Finding no genuine

issue of material fact remaining for trial, the bankruptcy

court, acting sua sponte, entered judgment for the landlords.

Id. at 507. 

The district court to which Piccicuto appealed

these rulings agreed with the bankruptcy court's legal

conclusion regarding vicarious liability under 523(a)(6).

It also upheld as "not clearly erroneous" the bankruptcy

court's "finding" that the landlords' liability was based

solely on the actions of their agent, Jeffrey Dwyer.

Accordingly, it affirmed the bankruptcy court's judgment.

II. II.

On appeal to this court, Piccicuto makes three

arguments. First, he renews his argument that the findings

-7- 7

of the superior court in connection with his ch. 93A claim

conclusively establish that the landlords themselves caused

him willful and malicious injury, as those terms are

understood under 11 U.S.C. 523(a)(6). Next, he reiterates

his alternative argument that vicarious liability can support

a finding of willfulness and maliciousness under 523(a)(6).

Finally, he contends that the district court abused its

discretion in declining his request for oral argument in this

matter. We need not reach the merits of Piccicuto's second

and third appellate arguments because we agree with his first

one.

A. Summary Judgment in Bankruptcy Proceedings A. Summary Judgment in Bankruptcy Proceedings

We very recently elaborated upon the operation of

summary judgment in bankruptcy proceedings. See In re

Varrasso, No. 94-1583, slip op. at 4-6 (1st Cir. Oct. 18,

1994). We need not, therefore, rehearse the relevant legal

principles at great length. Suffice it to say that our

review of an order initially made under Bankruptcy Rule 7056

(governing summary judgment in bankruptcy proceedings) does

not differ in any material respect from our review of an

order under Fed. R. Civ. P. 56. We review such an order de

novo, determining whether the lower courts have correctly

assessed the record in deciding that genuine issues of

material fact do, or do not, remain for trial. See In re

Varrasso, slip op. at 5. As always, in making this

-8- 8

determination, we will read the record and draw all

reasonable inferences in the manner most favorable to the

party opposing summary judgment. Id.

B. Applying the Principles B. Applying the Principles

As an initial matter, we note that the district

court applied the wrong standard of review in ruling upon

Piccicuto's first argument. The bankruptcy court did not

make any findings of fact entitled to deference; instead, it

merely stated its reading of the superior court's opinion in

the course of making a summary judgment ruling. See id. at 6

and n.2. The district court therefore should have reviewed

de novo the bankruptcy court's legal determination regarding

the effect of the superior court's findings.

Although we could remand to the district court for

reconsideration under the appropriate standard of review,

doing so would serve no useful purpose. As we explained in

Varrasso: "The validity vel non of a summary judgment

entails a pure question of law and, therefore, we are fully

equipped to resolve the question as a matter of first-

instance appellate review." Id. at 6. Accordingly, we

address on the merits Piccicuto's first appellate issue.

The easiest way to frame this issue is to note at

the outset that which is not disputed. First, there is no

dispute that those issues necessarily determined by the

superior court in finding that the landlords and Jeffrey

-9- 9

Dwyer had violated ch. 93A, 2 and 11, are to be given

effect in this proceeding. "When an issue of fact or law is

actually litigated and determined by a valid and final

judgment, and the determination is essential to the judgment,

the determination is conclusive in a subsequent action

between the parties, whether on the same or a different

claim." Restatement (Second) of Judgments 27 (1982).

Nor is there any dispute that the findings the

superior court necessarily made under ch. 93A, 2 and 11,2

are tantamount to findings of "willful and malicious"

behavior under 523(a)(6). The landlords agree with

Piccicuto that, for an act to be willful and malicious under

523(a)(6), it must be "deliberate," "wrongful," and "done

without regard to its consequences," see Brief of Appellees

at 9-10, and that the superior court's findings conclusively

establish that Piccicuto was the victim of willful and

malicious behavior under this definition, see Brief of



2. Under ch. 93A, 2, the superior court necessarily found
that the landlords' and Jeffrey Dwyer's actions (1) were
outside the penumbra of established concepts of fairness; (2)
were unethical or unscrupulous; and (3) caused Piccicuto and
his business substantial injury. See Wasserman v.
Agnastopoulos, 497 N.E.2d 19, 23 (Mass. App. Ct.), rev.
denied, 499 N.E.2d 298 (Mass. 1986). Under ch. 93A, 11,
the superior court necessarily found that the landlords' and
Jeffrey Dwyer's violation of ch. 93A, 2 was willful.
Wasserman, 497 N.E.2d at 24.

-10- 10

Appellees at 4 (conceding that Jeffrey Dwyer's conduct was

willful and malicious).3

Finally, there is no real dispute that, in its

findings of fact on Piccicuto's ch. 93A claim, the superior

court used language indicating that it was going beyond

theories of vicarious liability and holding the landlords

liable for their own acts and conduct towards Piccicuto. See

Appendix at 151-52 ("[T]he damages awarded must be multiplied

under [ch. 93A, 11] particularly where, as here, the

defendants' acts are willful, malicious and unjustified.");

Appendix at 152 n.17 (describing the aforementioned "acts" as

"[o]f active and relentless campaign against [Piccicuto], and



3. We are aware that some federal courts seem to have
construed 11 U.S.C. 523(a)(6)'s "willful and malicious"
provision more strictly than the Massachusetts courts have
interpreted ch. 93A, 11's "willful or knowing" provision.
While we have been unable to locate any authority which reads
ch. 93A, 11, as requiring an actual intent to injure, a few
federal courts have interpreted 523(a)(6) as imposing such
a requirement. See In re Conte, 33 F.3d 303, 306-07 (3rd
Cir. 1994) (noting that the circuits have variously defined a
willful and malicious act under 523(a)(6) as a wrongful act
done with intent to injure, a wrongful act that will almost
certainly produce harm, and a wrongful act that has a high
probability of causing harm) (collecting cases); see also In
re Scarlata, 979 F.2d 521, 536-39 (7th Cir. 1992) (Coffey,
J., dissenting) (noting the same split in the circuits but
arguing that most courts have adopted a definition which, in
essence, looks to whether the debtor has acted in knowing
disregard of the rights of another and whether the debtor
should have foreseen that injury could occur) (collecting
cases).
At any rate, because this circuit has not yet passed on
this difficult and controversial issue, and because the
landlords have expressly adopted Piccicuto's favorable
construction of the statute, we decline to delve into it at
this time.

-11- 11

of reckless disregard of the conduct of the business of this

property by the owners, who took no role in supervising, even

though they were the parties in at least five separate state

court proceedings and one bankruptcy court proceeding in

which they, in the final analysis were not successful");

Appendix at 153 ("[T]he conduct of all defendants violated

the generally accepted standards, falling outside the

penumbra of established concepts of fairness. It may be

fairly characterized as unethical, unscrupulous, [and]

causing substantial injury to [Piccicuto and his business].")

(emphases supplied).

There is, however, vehement disagreement about the

real meaning of the superior court's findings on Piccicuto's

ch. 93A claim. Piccicuto contends that the superior court

meant exactly what it said: that the landlords themselves

acted willfully and maliciously towards Piccicuto and his

business. The landlords, for their part, assert that the

court could not have meant what it said -- or more precisely,

that the court used regrettably loose language in describing

their "acts" and "conduct" -- because there was no evidence

that they acted against Piccicuto in any way. In so doing,

the landlords paint themselves as absentee owners who

recklessly failed to supervise their out-of-control, on-site

agent.

-12- 12

Leaving aside the question of whether the

principles underlying the issue preclusion doctrine allow us

to go beyond the unambiguous findings of a state court judge

and assess whether there was a factual foundation for the

findings, we find the landlords' reading of the state court

record to be myopic. While the landlords may not have

personally led the charge against Piccicuto, they themselves

brought at least two eviction proceedings against him when he

was trying to save his deal with the Driscolls and/or

otherwise sell his business. The superior court made it

clear that these eviction proceedings, which ended in

judgments for Piccicuto, were an integral part of the

campaign of harassment and intimidation underlying its

finding that "all defendants," by their "conduct," violated

ch. 93A, 2 and 11. See Appendix at 151.4 In our view,

this ends the matter; the superior court's unambiguous and

factually supported findings must be given effect in this

action. Piccicuto therefore should have been awarded summary

judgment on his claim that the $742,000 judgment debt is not

dischargeable in bankruptcy.

III. III.



4. We note that the superior court's reference to the
eviction proceedings is preceded by a statement that the
proceedings were brought by Jeffrey as agent for debtors.
Piccicuto has documented, however, that this statement (and
not the court's ultimate finding) was a slip of the pen.
Debtors themselves, as owners of the property, initiated the
eviction proceedings. See Appendix at 96-97.

-13- 13

For the reasons stated above, the bankruptcy court

erred in awarding summary judgment to the landlords and in

not awarding summary judgment to Piccicuto. It follows that

the district court erred in affirming the bankruptcy court's

mistaken order. We therefore reverse the judgment below and

enter summary judgment for Piccicuto.

So ordered.  So ordered.

-14- 14